BUCHNER vs. THE CHICAGO, MILWAUKEE & NORTHWESTERN RAILWAY COMPANY.

*November 29 — December 12, 1882.*

RAILROADS: HIGHWAYS: EQUITY. *(1) Liability for damage from change of grade. (2) Injunction. (3) Damages for taking land by railroad not determined in equity, though no objection made to jurisdiction.*

1. The lowering by a railway company of the grade of a highway, in order to adjust such grade to that of its track laid across the highway, is a taking of the property of the owners of lots abutting on such highway, for which and for the consequent injury to such lots the company must make compensation, although the track itself does not encroach upon that part of the highway of which the fee is in the lot-owners. Secs. 1828, subd. 5, and 1836, R. S., are *held* to be applicable to such a case.

2. After the grade of a highway has been so changed, an injunction will not be granted, at the suit of a lot-owner whose land, though injured by the change, is not actually encroached upon by the

track, either to restrain the railway company from running its trains or from graveling or repairing the highway, or to compel the restoration of the highway to its original grade.

3. A court of equity cannot determine the amount of the compensation to be made for lands taken by a railway company by right of eminent domain, the matter being of purely legal cognizance; and in such a case, the failure of a defendant company to answer that the plaintiff has an adequate remedy at law, does not waive the objection.

APPEAL from the Circuit Court for *Waukesha* County.

The plaintiff owns a lot of land in the town of Waukesha, containing about an acre and a half, on which is his dwelling-house and appurtenances. The northerly or northeasterly front of this lot is a public highway, known as the South Milwaukee road, or Broadway. The front is probably about 250 feet in length along such road. The line of the highway is northwest and southeast. The defendant company located and constructed its railway diagonally across this highway on a line running nearly east and west, bisecting the highway a few feet northwest of the northwest corner of plaintiff's lot. The track is laid several feet below the original surface of the highway. In order to restore the highway, the defendant, under the direction of the supervisors of the town of Waukesha, dug down the highway on plaintiff's lot to a grade corresponding with that of the railway. The plaintiff's lot was thereby damaged. The defendant denied its liability therefor, and refused to make compensation.

The object of the action can be best stated by inserting here the prayer in the complaint for relief, which is as follows: "Wherefore, the said plaintiff demands judgment that the said defendant proceed to condemn the said land so taken by it, and to ascertain the damages the plaintiff sustains by reason or on account thereof, and that it pay such damages, and that in the mean time, and until such damages are ascertained and paid, the said defendant, its agents, officers, and employees, and all persons acting under them, be

enjoined and restrained from entering on said street, digging in said highway or street, or removing any dirt or soil from said street or highway; that the said injunction be made perpetual, or that said plaintiff may have such other, further, or different relief as the court may grant in the premises, and for the costs of this action." The action was tried in the circuit court, and resulted in a judgment for the defendant, dismissing the complaint with costs.

The evidence is not preserved in the record. The case is here on the findings of fact and conclusions of law filed by the circuit judge. These state the case so fully and clearly that, notwithstanding their length, it is deemed important to insert them here. The court found the facts as follows:

"*First.* That for six years last past, and now, the plaintiff was and is the owner and in possession of the several described premises in the complaint mentioned, situated in the town of Waukesha, and together constitute the homestead premises of the plaintiff, and are bounded on the northerly side thereof by the South Milwaukee road, otherwise called Broadway, and on the east thereof by the Prospect Hill road, so called; and said plaintiff owns to the center of each of said highways, subject to the public easement thereon.

"*Second.* That the defendant corporation, in the early part of the year 1881, was lawfully engaged in the construction of its railroad from Milwaukee to Madison, which said railroad crosses said South Milwaukee road, or Broadway, diagonally, but does not encroach upon the center of the said road, of which the fee is in the plaintiff. The center line of the track, as laid, is eleven feet distant from, and the east end of the ties of said road is seven feet distant, northwesterly, from the northwesterly corner of the plaintiff's lands formed by the junction of his west line with the center line of said road. That in laying said railway across said road the defendant, in order to obtain a grade it considered necessary and desirable, was obliged to and did sink

the track about six feet below the former surface of said road.

"*Third.* That in conformity with sec. 1836 of the revised statutes, and to restore said road to its former state, and to such condition that its usefulness should not be materially impaired, the defendant, in the month of July, 1881, graded down the said South Milwaukee road, east and west of its said track; that said highway, east of said track, the fee of the south half whereof is owned by the plaintiff, was so graded down at the west end of the plaintiff's premises about five feet eight inches, and on a gradual elevation therefrom, until the surface of the former grade of said road was reached, at a point 250 feet east from said railway; that the plaintiff's premises, before said grading of the road, were about two feet above the grade of said road, and by the grading are now left, on the west line thereof, about seven feet eight inches above the present grade of said road, and at the east line thereof at about the former grade.

"*Fourth.* That on the 20th day of June, 1881, the town supervisors of the town of Waukesha made, and thereafter, on the 23d day of June, 1881, caused to be filed with the town clerk, an order with respect to such grading, a copy of which order is attached to and forms part of the answer in this cause, and is therein designated as "Exhibit A;" that said grading of said road was done by said defendant company solely and only to restore said highway to its former state of usefulness, and such work, so far as it has been completed, was done by said defendant in a careful and prudent manner, and in conformity with said order of said supervisors, doing no other damage to the premises of the plaintiff than such as was necessarily caused by such grading; that said defendant constructed a retaining wall along the whole front of the plaintiff's premises to retain the bank of plaintiff's land, at an expense to it of $600; but that said wall is in fact within the line of the said road, and upon the southerly

AUGUST TERM, 1882.                407

Buchner vs. The Chicago, Milwaukee & Northwestern R'y Co.

line thereof; that said work is not yet fully completed, it yet remaining to gravel the surface of the said road; that the plaintiff's premises have sustained no other injury than such as necessarily and incidentally results from a prudent and careful change of the said grade of said road, as required by said order of said supervisors, and by the requirements of law, but that the premises of the plaintiff, by reason of such change of grade, have been injured and depreciated in their market value to the extent of $1,500.

"*Fifth.* That the defendant has entered upon no part of the plaintiff's lands, except upon said part of the highway in front thereof, and that only for the purposes of said grading, and has laid its railroad over no part of the plaintiff's lands, and makes no claim so to do."

As conclusions of law the court found as follows:

"*First.* That the plaintiff has no cause of action against the defendant by reason of the construction and operation of said railroad across said highway.

"*Second.* That in a proper action the plaintiff would be entitled to recover of the defendant damages resulting to his property from such change of grade.

"*Third.* That this action cannot be maintained, and that the complaint therein must be and is hereby directed to be dismissed, with costs."

The plaintiff excepted to the first and third, and the defendant to the second, conclusion of law. The defendant also excepted to the finding of fact which fixed the plaintiff's damages at $1,500. No other exception to such findings was interposed by either party. The plaintiff appealed from the judgment dismissing the complaint.

*B. K. Miller, Jr.,* of counsel, for the appellant:

1. The plaintiff is the owner in fee of one half of the road-bed. *Kimball v. Kenosha,* 4 Wis., 321; *Goodall v. Milwaukee,* 5 id., 32; *Milwaukee v. M. & B. R. R. Co.,* 7 id., 85; *Ford v. C. & N. W. R. R. Co.,* 14 id., 609; *Weisbrod v. C.*

*& N. W. Railway Co.*, 18 id., 36; 20 id., 419; 21 id., 602; *Hegar v. C. & N. W. Railway Co.*, 26 id., 624; *Pettibone v. Hamilton*, 40 id., 402; *Kneeland v. Van Valkenburg*, 46 id., 434. 2. As a mere abutting owner he has an absolute right to protect the street in front of him for ordinary street purposes. *Pumpelly v. Green Bay Co.*, 13 Wall., 166; *Stone v. F. P. N. W. R. R. Co.*, 68 Ill., 394; *I. B. W. R. R. Co. v. Hartley*, 67 id., 441; *Blesch v. C. & N. W. Railway Co.*, 48 Wis., 185; *Haynes v. Thomas*, 7 Ind., 38; *State v. Berdetta*, 73 id., 189; *Protzman v. I. & C. R. R. Co.*, 9 id., 467; *Tate v. O. & M. R. R. Co.*, 7 id., 479; *Hooker v. N. H. & N. Co.*, 14 Conn., 146; *Glover v. Powell*, 2 Stockt., 211; *Lackland v. N. M. R. R. Co.*, 31 Mo., 180; *Pratt v. Brown*, 3 Wis., 613; *Fletcher v. A. & S. R. R. Co.*, 25 Wend., 462; *G. R. & I. R. R. Co. v. Heisel*, 38 Mich., 67; 47 id., 393; *Wash. Cemetery v. P. P. & C. I. R. R. Co.*, 68 N. Y., 597; *Cain v. C., R. I. & P. R. R. Co.*, 55 Iowa, 255; *Kellinger v. Forty-second Street R. R. Co.*, 50 N. Y., 212; *Mahon v. Utica & S. R. R. Co.*, Hill & D., 156; *Williams v. N. Y. C. R. R.*, 16 N. Y., 105; *People v. Law*, 22 How. Pr., 117; *Ford v. C. & N. W. R. R. Co.*, 14 Wis., 610; *Sherman v. M., L. S. & W. Railway Co.*, 40 id., 645; *Carl v. S. & F. R. R. Co.*, 46 id., 626; *Pettibone v. Hamilton*, 40 id., 402; *Story v. N. Y. Elevated Railway Co.*,     N. Y.,     . 3. The interest of the adjoining owner, his right to light, air, and ventilation, and freedom of egress and ingress, his exemption from annoyance, is property and can only be taken from him by legal process conditioned upon payment of damages. This would be so even if he had merely an easement in the highway, and even if the defendant had not cut down and carried away the plaintiff's land. 14 Chi. Leg. News, 291. The owner has a right of action against a person who pollutes the air upon his premises so as to seriously impair his enjoyment thereof. *Morley v. Pragnell*, Cro. Car., 510; *Fish v. Dodge*, 4 Denio, 311; *Morris v. Brower*, Anth. N. P., 368; *Carhart*

*v. A. G. L. Co.*, 22 Barb., 297; *Att'y Gen. v. Met. Gas. L. Co.*, Daily Reg., Feb. 10, 1882. Even if the odors are not injurious to health; e. g., smoke. *Crump v. Lambert*, L. R., 3 Eq. Cas., 409; *Hutchins v. Smith*, 63 Barb., 251; *Conklin v. Phœnix Mills*, 62 id., 299; *Drake v. H. R. R. R. Co.*, 7 id., 508. He has a right of action against one who makes an excessive noise in the neighborhood which seriously interferes with the enjoyment of his property. From a smith's forge: *Bradley v. Gill*, 1 Lutwyche, 69. From bells: *Soltau v. De Held*, 2 Sim. (N. S.), 133; *Davis v. Sawyer*, 15 Cent. L. J., 251. From manufacture of steam boilers: *Fish v. Dodge*, 4 Denio, 311. From the playing by a band of musicians: *Walker v. Brewster*, L. R., 5 Eq. Cas., 25. From the stamping of horses in a stable: *Dargan v. Waddill*, 9 Ired. (N. C.), 244. Or even from the barking of a dog: *Brill v. Flagler*, 23 Wend., 354. The owner of land adjoining a public street has a cause of action against a person obstructing his entrance to it. *Crooke v. Anderson*, 23 Hun, 267; *Jeffersonville, etc., Co. v. Esterle Co.*, 13 Bush (Ky.), 677; *Lackland v. N. M. R. R. Co.*, 31 Mo., 187; 5 Southern Law Rev. (N. S.), 41; *Ricket v. Met. Railway Co.*, 2 H. L. App. Cas., 175; *Beckett v. Midland R. Co.*, L. R., 3 C. P., 82; *Chamberlain v. Railroad Co.*, 2 B. & S., 605, 617; *Carli v. Stillwater St. R. & T. Co.*, 25 Alb. L. J., 156; *West Pa. R. R. Co. v. Hill*, 56 Pa. St., 460. Deep cuts, or embankments erected by railroads, require compensation to adjoining property owners. *Pittsburg R. R. v. Rose*, 74 Pa. St., 362; *Street Railway v. Cumminsville*, 14 Ohio St., 524; *S. C. Railroad Co. v. Steiner*, 44 Ga., 546; *Moore v. G. S. Railway Co.*, 10 Ir. C. L. R., 46; *Tuohey v. G. S. Railway Co.*, id., 98; *Tate v. O. & M. R. R. Co.*, 7 Ind., 479; *I., B. & W. Railway Co. v. Smith*, 52 id., 428; *Karst v. R. R. Co.*, 22 Minn., 121. The street must not be interfered with so as to injure adjoining proprietors. *Lexington v. Applegate*, 8 Dana, 289; *Cox v. Louisville R. R. Co.*, 48 Ind., 178. 4. The construction and maintenance of

defendant's railroad imposes a new burden or servitude upon the street, and violates plaintiff's rights. *Williams v. N. Y. C. R. R.*, 16 N. Y., 97; *Craig v. R. & B. R. R. Co.*, 39 id., 404; *Caro v. M. E. R. R. Co.*, 46 N. Y. Super. Ct., 138; *Strong v. Brooklyn*, 68 N. Y., 1; *Wash. Cemetery v. P. P. & C. I. R. R. Co.*, id., 591. It is therefore a taking of property contrary to sec. 13, art. I, of the constitution. Any injury to land which deprives the owner of the ordinary use of it, is equivalent to a taking of the land. *Pettigrew v. Evansville*, 25 Wis., 223; *Arimond v. Green Bay Co.*, 31 id., 316; *Hooker v. N. H. & N. Co.*, 14 Conn., 146; 15 id., 312; *Pumpelly v. Green Bay Co.*, 13 Wall., 166; *Bowman v. New Orleans*, 27 La. Ann., 501; *Nevins v. Peoria*, 41 Ill., 502; *Gillham v. Madison Co.*, 49 id., 484; *City of Aurora v. Gillett*, 56 id., 132; *City of Aurora v. Reed*, 57 id., 29; *Jacksonville v. Lambert*, 62 id., 519; *Dixon v. Baker*, 65 id., 518; *T. W. & W. R. R. Co. v. Morrison*, 71 id., 616. 5. The interest of the owner must be condemned by judicial proceedings and paid for before his property can be taken. *Powers v. Bears*, 12 Wis., 214; *Taylor v. Porter*, 4 Hill, 140; *Williams v. N. Y. C. R. R.*, 16 N. Y., 97; *Wager v. Troy Union R. R. Co.*, 25 id., 530; *E. & G. V. P. R. Co. v. B. & P. R. R. Co.*, 20 Barb., 644; *Fletcher v. A. & S. R. R. Co.*, 25 Wend., 462; *Trustees, etc., v. A. & R. R. R. Co.*, 3 Hill, 567. 6. Under the decisions of this court, the proper remedy of the plaintiff was to file a bill to enjoin the taking of the property until the land was condemned and the damages assessed. *Lumsden v. Milwaukee*, 8 Wis., 485; *Powers v. Bears*, 12 id., 213; *Ford v. C. & N. W. R. R. Co.*, 14 id., 609; *Bohlman v. G. B. & L. P. R. R. Co.*, 30 id., 105; *Diedrichs v. N. W. U. Railway Co.*, 33 id., 220; *Pettibone v. Hamilton*, 40 id., 402; *Carl v. S. & F. R. R. Co.*, 46 id., 629; *Church v. Joint School Dist.*, 55 id., 399. An injunction will always be granted to prevent the taking of private property without previous compensation. *Caro v. M. E. R. R.*

*Co.*, 46 N. Y. Super. Ct., 138; *Henderson v. Mayor*, 5 Miller (La.), 416; *Thompson v. G. G. R. R. & B. Co.*, 3 How. (Miss.), 240; *Davis v. Mayor*, 14 N. Y., 525–6; *Williams v. N. Y. C. R. R.*, 16 id., 97; *Milhau v. Sharp*, 27 id., 624; *Craig v. R. & B. R. R. Co.*, 39 id., 404; 2 Kent's Comm., 339, note *f.* 7. The defendant having answered, and not taken the objection, either by demurrer or answer, that the action should have been at law, it is now too late to insist upon that objection. It has been waived by not claiming such a defense and by going to trial upon the merits. *Tenney v. State Bank*, 20 Wis., 164; *Peck v. School District*, 21 id., 516; *Schwickerath v. Lohen*, 48 id., 600. 8. A court of equity having taken jurisdiction for one purpose, will retain it to do complete justice between the parties. *Prescott v. Everts*, 4 Wis., 319; *Akerly v. Vilas*, 15 id., 401; *Hammel v. Queen's Ins. Co.*, 50 id., 243. It is evident that complete justice between the parties can only be done by reversing the judgment and directing judgment for the $1,500 damages, and costs. Any other disposition is to allow the defendant to speculate upon and take advantage of decisions against it after full trial and hearing on the merits.

For the respondent there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler:*

1. Assuming that an action would lie for damages by reason of the change of grade, the suit was properly dismissed. The bill filed was for an injunction, claiming that the defendant sought to take land of the plaintiff without condemnation and without compensation. But the railway did not in fact touch the premises and no claim to take the plaintiff's land was or is asserted. The action for damages from the change of grade was a purely legal one which equity would not entertain. In order that a court of equity may retain a cause for a complete determination of the rights of the parties, there must be the equitable foundation upon which to build the jurisdiction. One cannot file a bill to reform a deed, and,

that failing, have claim for the unpaid purchase money. That could only be done *if the deed should be reformed.* This is apparent from the case of *Hammel v. Ins. Co.*, 50 Wis., 243. The principle is that jurisdiction must have once attached. It does not attach by merely filing a bill without equity *in fact.* There must exist some ground — some cause of action — of purely equitable jurisdiction, and then on the assertion of that jurisdiction the court, to prevent a multiplicity of suits, will superadd such relief of purely legal character as may be necessary to complete relief. See *Ragan v. Simpson*, 27 Wis., 359; *Supervisors v. Decker*, 30 Wis., 630; Story's Eq. Jur., §§ 54*i*–64*e.* It is not too late to insist upon this objection. It is true that where there is a concurrent and adequate remedy at law *upon the case stated in the bill*, the objection should be taken by demurrer and *formerly* by plea *now* by answer to the jurisdiction. If taken for the first time at the hearing, the objection comes too late, unless the court be wholly incompetent to grant the relief *sought by the bill. Hanley v. Cramer*, 4 Cow., 727. The rule, however, is not without exception. See *Ragan v. Simpson*, 27 Wis., 355; 2 Maddock Ch., 301. Both demurrer and plea concede the case made by the bill. 2 Maddock Ch., 301; Story's Eq. Pl., §§ 710–722; Mitford's Ch. Pl., 221. The cases cited by the appellant in no wise contravene this view. Here there was no opportunity or cause to demur or plead to the jurisdiction. The case stated in the bill, if true, exhibited a perfect case of equitable jurisdiction, without any adequate remedy at law. The difficulty was not that no case for equitable relief was stated, nor that the plaintiff had a legal remedy for the injury asserted, but that the case stated was wholly false. Failing in his entire action, the plaintiff asks in this action of equity to substitute, without change of pleading even, an action for damages. 2. No cause of action exists for the incidental damages occasioned by the grading in question. The continuing power to regulate the grade of

the highway being lodged with the authorities of the municipality, the exercise of that power, under legislative authority and in a proper manner, gives no right of action to an adjoining owner for any incidental injury thereby accruing to his property. Such injury is *damnum absque injuria.* Angell on Highways, 207–211; Mills on Em. Dom., sec. 195; *Radcliff v. Mayor*, 4 Comst., 194; *Alexander v. Milwaukee*, 16 Wis., 247; *Harrison v. Supervisors*, 51 id., 645. So, also, a corporation will not be liable merely because in the careful and *bona fide* exercise of its powers it has produced damage to a neighboring owner. Green's Brice's Ultra Vires, 382; *Eaton v. Railroad Co.*, 51 N. H., 505; *Radcliff v. Mayor*, 4 Comst., 195; *Bellinger v. Railroad Co.*, 23 N. Y., 42; *Seldon v. Canal Co.*, 29 id., 634; *Conhocton S. R. R. Co. v. Railroad Co.*, 3 Hun, 523; *N. P. R. Co. v. Elmer*, 1 Stockt., 754; *Att'y Gen. v. Railroad Co.*, id., 526; Pierce on Railroads, 179; *Hatch v. Railroad Co.*, 25 Vt., 49; *Richardson v. Railroad Co.*, id., 465; *Crittenden v. Wilson*, 5 Cow., 165; *Boston W. P. Co. v. Railroad Co.*, 23 Pick., 360; *B. & N. Y. R. R. Co. v. Brainard*, 9 N. Y., 100; *Bridge Co. v. Foote*, 9 Bush (Ky.), 264. The sovereign in exercising the right of eminent domain may delegate its power either to individuals or to corporations; and its delegation of the power is not a matter of review for the courts. Mills on Em. Dom., secs. 60, 61; and cases above cited. See, also, *Matter of Townsend*, 39 N. Y., 171; Angell on Highways, sec. 241. As a state or a municipality would not be liable for incidental injuries to property not taken by reason of the taking of adjoining property, or by reason of the change of grade of the highway, neither will its delegate so be liable, unless the state chooses to annex that condition to the grant. See authorities above cited. The same rule of liability applies to railroad companies as to individuals in such case. *Sabin v. Railroad*, 25 Vt., 363; *Slatten v. Railroad Co.*, 29 Iowa, 148; *Bradley v. Railroad Co.*, 21 Conn., 294. The law imposes upon the

defendant the duty of restoring the highway to its former condition of usefulness; and upon the town the duty of giving direction for its proper alteration and repair. Both have performed such duty. How can that act be wrong? *Actus legis nemini facit injuriam.* The defendant has acquired and desires no title in or right to use that part of the street owned by the plaintiff. It has only gone upon the street to grade it under authority of law and pursuant to the direction of the supervisors of the town for the purpose of restoring the highway, that it may be used for the legitimate purposes of public travel thereon, to which it was originally devoted. There is no change in the manner of its use. There is no imposition of further or other burden upon it. In such case the defendant is not liable for the consequential damages, if any, resulting to the plaintiff from the change of grade. Mills on Em. Dom., sec. 199; *Chapman v. Railroad Co.*, 10 Barb., 360; *Towle v. Railroad Co.*, 17 N. H., 519; *Slatten v. Railroad Co.*, 29 Iowa, 148; *Railroad Co. v. Heisel*, 38 Mich., 62; *Kellinger v. Railroad Co.*, 50 N. Y., 206; 1 Redfield on Railways, 320; *Whittieer v. Railroad Co.*, 38 Me., 26; *Railroad Co. v. Young*, 33 Pa. St., 175.

LYON, J. The second finding of fact, that the railway track of the defendant, where it crosses the highway, does not encroach upon the land of the plaintiff, is conclusive. The first and principal question presented for consideration by this appeal is whether, in view of this fact, the railway company is under legal obligation to compensate the plaintiff for the damage to his lot caused by adjusting the grade of the highway to that of the railway track. Two parties have an interest in the land occupied as a highway,— the public, represented by the proper town authorities, and the owner of the fee. The former has the right of way over the land, and the power through such officers to construct, improve, and grade the highway without interference by the

owner; while the latter has the absolute title, subject only to such easement or right, and such power. The compensation paid the owner whose land has been condemned for the uses of a highway, includes not only compensation for the loss he sustains by reason of the establishment of a public way over his land, but, ordinarily, for any injury to his other land caused by the lawful grading, construction, improvement, or repair of such way. Hence, the proper town authorities may, in their discretion, change the grade, deepen the ditches, or make other changes in a public highway from time to time, and unless some statute otherwise provides (as does the charter of the city of Milwaukee), the owner is remediless, no matter how greatly the burden of the servitude upon his land is increased thereby. This is so, not because the additional injury is *damnum absque injuria*, but because the owner has, presumably, once been compensated therefor. *Huston v. Fort Atkinson, ante,* p. 350.

The statutes (R. S., sec. 1828, subd. 5, and sec. 1836) hereinafter quoted confer upon railway companies the privilege of locating and constructing their railroads over, upon, and across any public street or highway, imposing upon such companies the duty of restoring the street or highway to its former state, or to such condition that its usefulness shall not be materially impaired, and thereafter to maintain it in the same condition against any effects produced by the railroads. These are the conditions upon which the state allows the use of the public easement in the streets and highways to be shared, and perhaps temporarily interrupted, by railroad companies. The performance of these conditions by the companies is, so to speak, the compensation which the companies pay for the privileges thus granted. But this compensation is made to but one of the parties who have an interest in the land covered by the highway,— that is, to the public,— and is made only for the use of or interference with the public right

therein. It does not compensate the owner of the fee for any injury he may sustain because of the use of the street by the company, and the adaptation thereof to the grade of the railroad track. If, as in this case, the railway company, in order to perform its legal obligation to restore the highway it occupies with its track, is compelled to dig and carry away the soil of any person, thereby depreciating the value of his property, it would seem that this can be lawfully done only by the exercise of the right of eminent domain, an indispensable condition to the lawful exercise of such right being that just compensation must be made to the owner of the property taken. This proposition would not be questioned but for the fact that the *locus in quo* is a public highway. The learned counsel for the defendant maintained in his argument that the reduction of the grade of the highway by the company to adapt it to the grade of the railway track was merely the performance of a function of the town, which, but for the statute, the town would have been compelled to perform; that had the town reduced the grade, the plaintiff would have had no valid claim for the resulting damages, and hence he is still remediless, notwithstanding the intervention of the company.

In the taking of private property for public use there is no room for saying there is *damnum absque injuria;* for just compensation therefor must be made. Const., art. I, sec. 13. That the property of this plaintiff has been taken for public use cannot be doubted. He has had no compensation therefor, for it cannot be presumed that any such contingency as has happened, to wit, the sinking of the grade of the highway on his lot several feet and the removal of the soil and earth therefrom, was contemplated in the award of damages to the lot when the highway over it was established. It could not then have been anticipated that a railway company would lay its track across the highway, six or eight feet below the surface thereof, and thus necessitate a corresponding

reduction of the grade of the highway across the lot. But for the construction of the railway there no change of the grade of the highway would have been necessary. The old grade was, presumably, sufficient for the public use of the highway, and the plaintiff was justified in adapting his buildings and grounds to that grade. He took the risk, and that only, that the proper town officers might at some future time, in their discretion, order a change of the grade, the better to subserve the use of the highway by the public. But he did not, in our opinion, take the risk that a railway company would so construct its road that the highway would become useless until it was graded down upon the plaintiff's lot to an extent seriously impairing the value of his property.

It seems to us that the plain, sensible, just view to be taken of the matter is this: The railway company were obliged to restore the highway as compensation for the right to run their track across it. To do so, it was necessary that it should enter upon land owned by the plaintiff, and dig and carry away large quantities of earth and soil, permanently changing the surface of the land to his injury. It is also necessary that the company have the right to enter upon the same land in the future, in a certain contingency, for the purpose of repairing the highway. The obligation of the company to make compensation for the land thus taken and the consequent injury is just as clear and certain as its obligation to pay the laborers it employed to do the grading, or for the tools which they used. All was done for its benefit alone. The public received no benefit of the work — enjoyed no advantage from it that it did not have as fully and amply before the railroad was constructed. The highway was cut down and the plaintiff damaged thereby for the advantage of the railway company, and we are aware of no rule of law or morals which will compel the plaintiff to suffer the loss and allow the company to reap the benefits of the transaction.

By way of illustrating our views, we have spoken of the ele-

ments which are presumed to enter into an award of damages resulting from establishing a highway. The principle is precisely the same if the owner dedicates a highway to the public use, for the same elements enter into the value of the land, and may fairly be presumed to have influenced the owner in making such dedication, or, in case of a sale thereof, the grantor and grantee in fixing the consideration.

The precise question under consideration is now presented for the first time in this court. We have chosen to determine it in the light of fundamental principles of law. The learned counsel have cited numerous adjudged cases in support of their respective views. Reference to these cases will be preserved in the report of this case, but is not required here. In each of them the court has sought to apply the principles which control our judgment in this case. It is believed that they all fully recognize the rules of law which we have endeavored to apply here. We are strongly inclined to think that the statutes above cited were designed to and do provide for just such cases as this. Sec. 1828 provides that a railroad company shall have power, . . . "5. Subject to the provisions of sec. 1836, to construct its railroad across, along, or upon any stream of water, watercourse, street, highway, plankroad, turnpike, or canal which its route shall intersect or touch; to carry any highway, street, turnpike, or plankroad which it shall touch, intersect, or cross, over or under its track, as may be most expedient for the public good; to change the course and direction of any highway, street, turnpike, or plankroad, when made necessary or desirable to secure more easy ascent or descent by reason of any embankment or cut made in the construction of the railroad, and take land necessary therefor: provided, such highway or road be not so changed from its original course more than six rods, nor its distance thereby lengthened more than five rods." Sec. 1836 is as follows: "Every corporation constructing, owning, or using a railroad shall restore every

stream of water, watercourse, street, highway, plankroad, turnpike, or canal, across, along, or upon which such railroad may be constructed, to its former state, or to such condition as that its usefulness shall not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad. When any lands shall be required in order to change any highway, street, turnpike, or plankroad, the same may be condemned, taken, and compensation made in the manner provided in this chapter; and when so taken, shall become a part of such highway, street, turnpike, or plankroad to the same extent as, and by the same tenure by which, the adjacent parts thereof are held."

While it may be argued that these provisions for condemnation relate to cases in which the line of the highway is changed to accommodate the railroad, so that it becomes necessary to condemn lands for the highway not theretofore included in it, and while it may be admitted that the principal purpose of the statute is to provide for such cases, yet we think it must be conceded that the language of sec. 1836 is sufficiently broad to include this case; for assuredly the highway was changed in respect to the grade, and the land of the plaintiff was required and taken in order to change it. Recurring to the general principle already stated and applied to the case, that the plaintiff must be compensated for his land before it can lawfully be taken, it is best for all parties interested to hold that the statute provides for such taking in a case like this. If it does not, we should be compelled to hold that the legislature has no power to authorize the taking without providing for compensation to the owner, and hence that the defendant was a mere trespasser in cutting down the highway on plaintiff's land. It is a cardinal rule that if the words of a statute admit of two constructions, one of which will make the statute valid and the other invalid, that construction will be adopted which saves

Buchner vs. The Chicago, Milwaukee & Northwestern R'y Co.

the statute.   This seems a proper case in which to apply the rule.   We therefore construe the statute as providing for the taking and condemnation of plaintiff's property, for which compensation must be made as prescribed in the same chapter.   R. S., ch. 87.

We are next to determine whether the facts found by the court entitle the plaintiff to an injunction.   The action was commenced August 18, 1881, and the finding is that the highway was graded down in July preceding.   At the time of the trial nothing remained to be done to complete the work except graveling the road.   Contrary to an allegation in the complaint, the railway track is not laid upon the plaintiff's land.   Under these circumstances a preventive injunction would seem to be inoperative.   It could not properly go to restrain the defendant from running its trains, because they are not run upon the plaintiff's land.   It ought not to issue to restrain the defendant from completing the restoration of the highway by graveling the same, because the public interest requires that to be done.   And it would be idle to restrain the defendant from further interference with plaintiff's land, because it has no occasion to interfere further with it, unless it be to perform the statutory duty of repairing the highway.   The railroad company would probably submit complacently to an injunction restraining it from the performance of that duty.

Neither is this a proper case for a mandatory injunction to compel the restoration of the highway to its original grade. The public interests require that the highway should not be again interrupted.   Besides, the power of a court of equity to issue a mandatory injunction is always exercised with extreme caution — seldom exercised at all.   High on Inj., § 2. We conclude that the circuit court properly denied an injunction.

It was very earnestly argued by the learned counsel for the plaintiff that inasmuch as the court assessed the plaint-

Buchner vs. The Chicago, Milwaukee & Northwestern R'y Co.

iff's damages, the action should be retained, and judgment should be entered therein for the sum so assessed. We think the position is untenable. The statutes prescribe the procedure for ascertaining the compensation to which the plaintiff is entitled. This is done in the first instance by commissioners to be appointed by the court. R. S., 539, secs. 1845–1848. Either party may procure the appointment of such commissioners (sec. 1852), and may appeal from their award to the circuit court. The appeal is tried by a jury as ordinary · actions at law to recover damages are tried. Sec. 1849. Such procedure is entirely foreign to the functions of a court of equity. The matter involved is of such purely legal cognizance that a court of equity, from its peculiar organization, cannot afford relief. *Tenney v. State Bank*, 20 Wis., 152. In such a case the failure to answer that the plaintiff has an adequate remedy at law, does not waive the objection. In this case the defendant excepted to the assessment of damages, and this exception is available to it to save the judgment. *Maxwell v. Hartmann*, 50 Wis., 660.

*By the Court.*— The judgment of the circuit court is affirmed.