# Rathbone *against* Tioga Navigation Company.

After the issuing of letters patent by the governor, in compliance with the requisition of an Act of Assembly creating a corporation, a deed of conveyance to the company is good and effectual to vest the estate conveyed in it; although they may not have been so far organized as to have elected their officers; and their assent to it will be presumed.

A conveyance of land to a company for the purpose of constructing a rail-road upon it, " provided the same does not interfere with buildings on said land," will be so construed as to prevent the construction of the road so near to the buildings as to endanger their safety or destroy their usefulness.

A corporation may become bound by an express or implied contract, or with or without seal.

ERROR to the Common Pleas of *Tioga* county.

Clarendon Rathbone presented his petition to the court for the appointment of viewers to assess damages for injury done to his land by the location of a rail-road by the Tioga Navigation Company through it. The viewers were appointed, and made a report in his favour for $350, from which the company appealed to the Common Pleas; and when the cause came on for trial, the company gave in evidence the following deed of the said Clarendon Rathbone:

" Know all men by these presents, that we, whose names are hereunto subscribed, in the township of Lawrence, in the county of Tioga, Pennsylvania, in consideration of one dollar to us in hand paid by the Tioga Navigation Company, have bargained, sold, released, and quit-claimed, unto the said Tioga Navigation Company, and to their successors and assigns, all those certain pieces or parcels of land, situate, being and lying in the township of Lawrence, by us jointly and severally occupied, or owned, not exceeding in width three rods, across said land, providing the same does not interfere with buildings on said land; then in that case, all damages, so far as relates to the buildings, to be paid by the company, in such part thereof, and in such direction as the president and managers to be elected, shall lay out the rail-road from Blossburg to the state line, at or near Lawrenceville; and also the right and privilege of casting earth upon, and otherwise using so much of the land on both sides of the piece herein conveyed, as may be necessary for the convenience of said company, while the said rail-road is constructing, to have and to hold the same, together with the privilege aforesaid, unto the said Tioga Navigation Company, their successors and assigns, for the pur-

poses of the rail-road aforesaid, with all and singular the heredi-taments and appurtenances thereunto belonging."

CONYNGHAM, President, thus stated the case and charged the jury:

This is a proceeding commenced under the 4th section of the Act of 4th of April 1833, supplementary to the Act incorporating the defendants, and is brought into court by the appeal of the defendants from the report of viewers, under the provisions of the same section. The declaration sets forth the proceedings under this Act, and several pleas are put in by defendants; to only one of which, under the view the court proposes to take of the cause, is it necessary to refer; this is the deed of release dated the 27th of July 1835; and to this special plea the plaintiff replies and alleges that it was obtained by fraud, or under certain conditions as to location and fencing, which have not been complied with by the defendants. There is no evidence before you of any fraud in regard to this matter, or any evidence of a condition with regard to the location, as stated in the pleadings; and the evidence of Dr Parkhurst that the agreement with the several parties, was that the company should fence out the road, is not a condition which would destroy or defeat the operation of the release or agreement at this time, whether the company have done the fencing or not. The charter of the company was obtained from the governor under the seal of state, on the 18th day of July 1835, previous to the date of the release; and therefore under the 3d section of said supplementary Act, the said company was then authorized to purchase lands or tenements, which may be neces-sary for the erection of said rail-road. For all then that appears in this cause, you are to consider this as a valid and existing deed and agreement between the parties..

The fair construction of the deed appears to the court to be, (and this is matter of law for us,) that it is a release of three rods of land across the farms of the subscribers, to be located in such part thereof, and in such direction as the president and managers of the company to be elected, shall select, to occupy with their rail-road, &c., together with the privilege of using land on each side for certain purposes therein specified; provided, however, that in case such location shall interfere with any buildings, then the company shall pay the damages for such interference with the buildings; that is vesting in the company the right to the land, wherever the road may be located for such purposes, absolutely, upon the implied agreement to pay damages for any buildings they may interfere with by such location. A question would in the first place here arise, if it were not for another part of this case to which your attention will be hereafter directed, whether under the evidence there is now such a case presented, that the court could, under their legal construction of this written agree-ment, leave to you the ascertainment of any damages. We think

that in such a case as is here presented before us, it would not require that there should be an absolute touching of the building to interfere with it.  An interference with, or an obstruction to the privileges and appurtenances rendered necessary for the enjoyment of the building for the purposes for which it was intended to be used, would be contrary to the spirit of this contract.  Exposure to danger by fire, unreasonable obstruction of the proper mode of ingress and egress, and such like matters, would all be calculated to lessen the value of the buildings as such; and therefore in our opinion, if they existed, would be such an interference with, and damages to the buildings, for which the owner might fairly seek for compensation under the meaning of this agreement or release.  It might not have been necessary that the court in this case should have given the above opinion to you, as we think there is a legal difficulty in the way of the plaintiff's recovering any thing in this form of proceeding; but we have been desirous that the various questions arising under the evidence, might all be disposed of on the record.

We have already said to you that the execution and delivery of this release vested in the defendants the right to the three rods of land, together with the privilege of using the necessary land on each side for their convenience, while the road was being constructed; subject only to the implied agreement, and that an absolute one, irrespective of any increased value to the property, to pay not the value of the land occupied, but only for the buildings; and also under the testimony of Dr Parkhurst, for fencing.  It gave to the company the right of immediate entry, to locate the road wherever the president and managers might direct, and also to construct the same; and took away from them the characters of trespassers, which would otherwise have appertained to them for so doing, unless they should have previously fulfilled all the prerequisites required of them under the 4th section of the Act of April 1833.

This Act however contemplates a state of things altogether different from those we have just stated.  The 1st section provides how the road is to be located; it repeats all the different considerations which are to operate, to justify and authorize the location.  The 4th section considers no interest in the land to be vested in the company, until payment of the damages, &c.; and indeed no right of entry, until the commencement of the proceedings and tender of the amount reported by the viewers; and these damages, whether estimated by viewers, or by a court and jury, are for the land, including buildings and all appurtenances, to be estimated however, under the general advantage derived to the owner of the property from the rail-road.

Again, the Act gives no authority to the company to go through a dwelling-house, or any out-house of the value of $500, without the consent of the owner.  Now it may be the true con-

struction of this agreement, that the company have the consent of the owner to pass through any buildings, being obliged merely to pay the damages for the building. Further, the Act regards the owner of the land occupied by the location of the road, as the person entitled to damages under the summary method of recovering them, therein provided. In this case, the company under this release, and not the plaintiff here, were the owners of the land at the time of the location. Is it not evident that the Act refers to a case where the owner and the company are different persons? We finally say to you that this release so changes the situation and rights of the parties respectively, that the special proceeding provided under the 4th section of the Act does not apply to them, and therefore that the plaintiff cannot now recover.

His remedy, if he has sustained damages contrary to the spirit and meaning of the deed of release, is by an action upon the implied undertaking therein contained. And we add that there is nothing in this case to authorize the plaintiff to recover the value of the two rods of land, over and above the three rods occupied under this release.

The court further charge the jury in reply to the points submitted by the plaintiff:

The *first point* does not arise in the cause.

To the *second*, we reply that the release recited a valuable and sufficient consideration paid. That Dr Parkhurst swears he was requested by some of the stockholders in the company to procure releases on the various different proposed routes of the road, to assist in deciding on the question of location, whether on the east or west side of the Tioga river. This release from its very language, is drawn, submitting the location to the officers afterwards to be elected, the charter having been then duly obtained. It is afterwards delivered over to the company, whose officers as the plaintiff shows us, were duly elected in August 1835, and claiming under this deed, they proceeded to locate the road.

*Maynard* and *Greenough*, ·for plaintiff in error, argued that delivery was essential to the validity of a deed, and before the company was organized, it was incapable to receive it. 5 *Watts* 354; 2 *Watts* 362; 8 *Watts* 9; 1 *Penn. Rep.* 32, 402; 7 *Cranch* 299.

*Williston*, for defendant in error, cited 4 *Whart.* 135.

The opinion of the Court was delivered by

KENNEDY, J.—A number of errors have been assigned, some of which are exceptions to the general charge delivered by the court below to the jury; and the rest are exceptions to answers given by the court to points submitted by the counsel of the complainant. The charge delivered by the president of the court (Conyng-

ham,) is certainly not only correct, but excellent in every respect, so far as it is applicable to this case. Whether the company had by the deed of grant, bargain and sale to them, from the owners of the lands through and upon which the rail-road has been constructed, obtained thereby the *consent* of the owners respectively, to pass through their buildings thereon, with the rail-road, in case it should be found expedient to do so, is a question which, as it did not arise in the case, though the court below have noticed it by saying it might be so, without giving any decisive opinion upon it, we shall therefore avoid passing upon it. Being satisfied also with the reasoning of the court, as well as with their conclusions in regard to the various questions raised on the trial of the cause, we shall do but little more than adopt what the court have said. It has been urged with great plausibility, and in a manner perhaps somewhat more imposing here than that which was exhibited in the court below, that the answer of the court to the plaintiff's second point is erroneous, and especially in not answering that portion of it, whereby the court were requested to instruct the jury that the release (meaning the deed of bargain and sale,) was inoperative, on the ground, among others therein mentioned, "that Curtis Parkhurst being only a commissioner authorized to receive subscriptions for stock, was not authorized to procure releases; that the company never having elected their officers, were not organized, and therefore were not capable of making a contract, or even receiving a grant of the nature contained in the deed." Now if it can be shown that it was competent for the company, after they became completely organized by the election and appointment of proper officers, by means of whom they were to act as a corporation, to accept of the deed so as to entitle themselves to the benefit of it, the conclusion would seem to be inevitable that they could only avail themselves of it, by becoming bound to observe and perform on their part everything therein, either expressly or impliedly contained, as forming any part of the consideration for conceding to the company the advantages set forth in the deed. The most formidable objection raised against the efficacy of the deed, seems to be that it 'contained a grant of a freehold estate in lands, upon certain terms and conditions therein specified; and as the company, at the time of its execution, were not organized, and therefore not in being for the purpose, as it is contended, of accepting the grant upon the terms therein mentioned, the deed could not have any immediate operation for want of the assent of the grantee; nor could it have any future operation so as to pass the title of the land, because that would be in violation of the rule of law, which declares that a freehold estate can not be created by deed to commence *in futuro*. Indeed the counsel of the complainant appeared disposed to go still further, by denying the existence of the defendants altogether, at the time of the signing and sealing of the deed; and that if the grantee

were not in *rerum natura* at the time, it was manifest that the grant contained in the deed could not take effect; nor indeed could it be considered a deed at all, seeing there was no grantee in being to whom, or for whose use it could be delivered; and that without delivery, though signed and sealed by the plaintiff, yet it could not possibly be his deed, as delivery was essentially necessary to make it so. But if a rail-road made by a corporation constituted for that purpose, with a view to accommodate the public by transporting passengers and goods upon it when requested, is to be regarded as a public highway, the grant contained in the deed may be good without any specific grantee *in esse* at the time, to whom the fee could be conveyed. See 3 *Kent Comm.* 450, and the cases referred to there in note. That such a rail-road is so considered, is abundantly clear from the opinion of this court, delivered by the Chief Justice in *The Philadelphia and Trenton Rail-road Company*, (6 *Whart. Rep.* 43–46). It is in reality a road made for the use of the public, by a company incorporated specially for that purpose, who construct it with their own funds, but have a license from the public to remunerate themselves for doing so, by charging and receiving tolls from passengers and the owners of goods transported thereon. But it is not strictly correct, either in fact or in law, in this case, to say that the company was not in being at the time of the signing and sealing of the deed; for they received some days previously, from the governor of the state, letters patent, incorporating them by the name of " The Tioga Navigation Company," in conformity to an Act of Assembly passed for that specific purpose. And the letters having been granted thus at the special request of the corporators themselves, according to the direction of a special Act of the Legislature passed in that behalf, rendered a formal acceptance of the charter by them unnecessary. The subscribers for stock, whose names were presented to the governor as such, became incorporated immediately upon the execution of the letters patent by the governor, although their constitution may in some degree have been incomplete until the officers were appointed; so that even if it had been necessary, in order to have rendered the grant contained in the deed, effectual, that the grantee therein named should have been in existence at the time, it was so; and the delivery of the deed to Mr Parkhurst for the use and benefit of the company, was a good delivery of it to the company. That the company approved and accepted it, might in the absence of proof to the contrary, be fairly presumed, seeing it appears plainly on its face, to confer a benefit upon them; but it is unnecessary to make or rely upon such a presumption, as the company have expressly asserted their right to the land under it. The company then having accepted the deed after they were completely organized, became thereby bound to observe and fulfil on their part, all the terms and conditions upon which it would appear to have

[Rathbone v. Tioga Navigation Company.]

been executed. For instance, if they, in locating or constructing the road, interfered in any way with the buildings of the plaintiff, so as to occasion any loss or damage to him, they ought to repair it under the obligation arising from the acceptance of the deed; and if they have or do not, he may maintain an action of assumpsit against them on account thereof; or if they have failed to make any fences connected with the grant of the land to them by the plaintiff, he may also maintain his action against them in like manner, for such failure. These matters cannot be considered as conditions annexed to the grant of the land, which would go, as was suggested in the course of the argument by the plaintiff's counsel, to avoid it in case of a non-observance and a non-performance of them by the defendants, because there is nothing on the face of the deed going to show that such was the intention. Neither is it necessary, as was also said, in order to maintain an action against the company for the non-performance of their engagement in respect to these matters, that the plaintiff should have such engagement from them in writing, under their corporate seal; because it was held by this court in *The Chesnut-Hill Turnpike Company* v. *Rutter*, (4 *Serg. & Rawle* 16), that a corporation may, *without seal*, become bound, either by an express or implied contract, and that assumpsit will lie against it for a breach thereof.

Judgment affirmed.