THE SIOUX CITY AND PACIFIC RAILROAD COMPANY, PLAINTIFF IN ERROR, v. ANNIE WEIMER, DEFENDANT IN ERROR.

1. **Railroad:** CROSSING PUBLIC HIGHWAY: DAMAGE TO ADJOINING LAND. Where a railroad is constructed across a highway on a level materially below the level of the highway, it is the duty of the railroad company, at its own expense, to adapt the level of the highway to that of the railroad, by proper gradients. And if the making of the necessary cuts and gradients on the highway for such purpose is a damage to adjoining lands the railroad company will be liable therefore.

2. ———: EMINENT DOMAIN: DAMAGES. There being testimony tending to show that defendant's land was damaged, was isolated, and rendered inaccessible by reason of the taking of the right of way, and the cuts and fills rendered necessary by the construction of the railroad, and the jury having been permitted to view the premises, a verdict for an amount of damages which seems to be reasonable and not extravagant will be upheld.

3. ———: ———: VERDICT. In such case the verdict can not be held to be excessive.

4. ———: ———: EVIDENCE. The owner of land taken for right of way by a railroad company, having resided upon and improved it for several years, who swears that he knows what it is worth, is a competent witness on the question of its value. *B. & M. R. R. Co. v. Schluntz,* 14 Neb., 421.

5. ———: ———: ———. So, too, are other persons who have resided for several years in the immediate neighborhood of the land, and who seem, upon examination, to be well informed of its situation, condition, and value. *Id.*

ERROR to the district court for Washington county. Tried below before WAKELEY, J.

*L. W. Osborn* and *Joy, Wright & Hudson,* for plaintiff in error, cited: Mills on Eminent Domain, §§ 169, 170. *Towle v. Eastern R. R.,* 17 New Hamp., 519. *Isom v. Miss. Cent.,* 36 Miss., 300. *Proprietors of Locks v. Nashua & Lowell R. R.,* 10 Cush., 385. *F. E. & M. V. R. R. v. Whalen,* 11 Neb., 585.

*Davis & Powers,* for defendant in error, cited: *Gotts-chalk v. C., B. & Q. R. R.,* 14 Neb., 550. Comp. Stat., § 106, ch. 16.

COBB, CH. J.

This was an appeal to the district court from the award of damages for the taking of a right of way, for railroad purposes, across the land of appellee. Three and 49-100 acres of land were taken, and the commissioners allowed as damages the sum of three hundred and forty-nine dollars. On appeal by the railroad company, and a trial to a jury the verdict was for four hundred dollars. And the railroad company brings the cause to this court on error.

Counsel for plaintiff in error make three points:

" 1. That the verdict is contrary to law, and is not sustained by the evidence."

" 2. The court erred in refusing to give instruction No. one asked by plaintiff."

" 3. The admission of improper testimony."

These points will be considered in the inverse order in which they are above stated.

It appears from the bill of exceptions that the first witness called was the engineer who laid out the line of railroad across the land in question. He presented a map which is attached to the bill of exceptions. This map shows the railroad cutting off the south-east corner of defendant's land, or rather the right of way covering the corner, as defendant's land does not, any of it, extend across the right of way. It also shows a public highway crossing the railroad track nearly at right angles, near the south-east corner of defendant's land, and entering the right of way at the point where the north-west line of the right of way crosses the south line of defendant's land. The witness stated that the depth of the cut of the road-bed at that point would be thirty-seven feet. Witnesses

were called and examined by the defendant over the objection of the plaintiff, as to the situation of the plaintiff's land, as to abruptness and descents, in connection with which the necessary cutting down and grading of the bed of the highway would render a portion of said land inaccessible to the said highway. Plaintiff's counsel contend that this testimony should have been excluded because they say that "if the said cut is made as suggested by the questions, the change in highway, if made, will be made entirely outside of the right of way taken. The supposed inconvenience to defendant by reason of increase of distance in travel arises or will arise in her passing from other portions of her land not taken for right of way. The questions are based upon suppositions as to what may or may not occur in the future. If they occur it will be a change in the highway by others than the company, for which the company is not answerable to the defendant."

The railroad company having acquired the right of way over defendant's land must be presumed to intend to cut down its road bed according to the plan and profile as testified to by its engineer; in which case, as I understand the law, it would be its duty to also cut down and grade the highway so as to give it a proper gradient for the passage of vehicles. And if by reason of the peculiar situation and topography of her land, such cutting down of the highway would be an additional damage to the land, I know of no reason why it should not be allowed to her, but on the contrary I think that the provision of the constitution, as well as considerations of justice, would give it to her. Hence, any proper testimony was admissible for the purpose of enabling the jury to ascertain the fact and extent of such damage.

Complaint is also made that the court upon the trial below permitted witnesses to testify as to the market value of the land taken for right of way without showing themselves competent.

In the case of *B. & M. R. R. Co. v. Schluntz*, 14 Neb., 421, the law is thus stated in the syllabus by Ch. J. Lake: "The owner of land taken for right of way by a railroad company, having resided upon and improved it for several years, who swears that he knows what it is worth, is a competent witness on the question of its value." "So, too, are other persons who have resided for several years in the immediate neighborhood of the land, and who seem upon examination to be well informed of its situation, condition, and value." Tested by the standard thus laid down the witnesses objected to were entirely competent.

2. Upon the trial the plaintiff prayed the court to give the following instruction in charge to the jury:

"No. 1. The railroad company in condemning the right of way over the land of the claimant acquire no right to change or interfere with the public highway, and the claimant can recover no damages based upon any imaginary injury based upon a change of grade in the highway."

From what is said above in considering the third point, it can scarcely be necessary to say that this instruction was properly refused. Leaving out the word "imaginary," the very reverse of the proposition there stated is believed to be the law. The railroad company did acquire the right to interfere with the highway, and thereby assumed the duty of restoring the highway to a condition of usefulness to the public at its own expense and not in any degree at the expense of the defendant.

1. That the verdict is contrary to law and is not sustained by the evidence.

The verdict is for $400.

There is a sharp conflict of evidence as to the value of the defendant's land actually taken for right of way. Two of the defendant's witnesses placed the value of the three and 49–100 acres of land taken at seventy-five dollars per acre, which would amount to two hundred sixty-one dollars and seventy-five cents; two of them placed it at fifty

dollars per acre.    The plaintiff's witnesses placed the value
at about half that amount.    But it will be remembered
that defendant claimed damages in addition to the value
of her land actually taken, for the deprivation to her of
access to her land from the highway by reason of the gra-
dient of the highway rendered necessary to reach the level
of the railroad in the deep cut.    And it appears as well
from the bill of exceptions as from the record proper that
the jury were "conducted in a body in charge of the sher-
iff to view the property in controversy herein."    This it
seems from the bill of exceptions was done "upon request
of one of the jurors and by consent of parties."    Granted
that the sole object of this view was to enable the jury to
apply the testimony to the case—in other words, to enable
them to understand the testimony, and not to supply the
place of testimony entirely wanting—there was testimony
which, with the aid of an actual view of the premises, may
have justified the jury in rendering the verdict which they
did render.    I copy a portion of the testimony of T. M.
Canter, a witness on the part of the defendant.

Q.    Look at this map and see if you recognize the lay
of the land in that vicinity.

A.    Yes, sir.

Q.    Please describe the lay of the land immediately
north-west of the central portion or western portion of this
piece of land.

A.    As I remember from observation taken while on
the ground, just about where the road enters the Weimer
tract of land it strikes what we term a cove—a flat place
descending from the high lands to the low bottom—and it
runs right across the mouth of that cove; the line of the
new road; the bridge approach as I understand it.

Q.    About how many acres is there in that cove, from
your recollection of it?    Do you know how many acres
there is in that cove that has not been taken?

A.    Perhaps three to five acres.

Q. State how that land is situated with relation to being cut off by reason of the construction of the road across there?

A. The cove coming down from the high lands extends to the present lines of the new road.

Q. Coming down from the high lands and running down to the present grade, which is some more than six feet, does it render it impossible to cross it?

A. I don't know. It is more than six feet, I should judge from the appearance.

Q. Can you indicate at what point on the county road is most accessible to this cove?

A. The county road as marked here is not as I understand it. It is not on the line of the old one; from the present traveled road this would be the most accessible point (*indicating*) if the road was not there, being right opposite the land in question.

Q. What is the prospect as to whether there is to be a cut or a fill at the point indicated?

A. There is a fill there of six feet or more.

Q. Explain which would be the most accessible point to get to her piece of land, this being the county road as before indicated, when you come down following the line of the county road opposite this point?

A. The most accessible road to it would be from the point here, opposite the land we wish to approach, and that would be at that point (*indicating on the county road*). In order to get to the land from the county road we cross, as has been said, a fill of twelve feet in height. That is the only difference in the condition of things now and the way they were.

Q. Indicate where the owner of the land will have to go now from the county road in order to approach this particular piece that you have been testifying to?

A. She would have to go north-west until she gets clear beyond the railroad, being south-east of the traveled

road until she gets west of the land taken; then back along through the cultivated lands to this point (*indicating*), that being the only accessible way of reaching that from the county road at this point.

Q.    Suppose you were coming in from the west.

A.    Then you would come to this point (*indicating*) and go down across the cultivated lands in that direction to the land in question.

Q.    What is the lay of the land?

A.    Broken and abrupt.    Quite a descent.

Q.    Designate at what point the owner of this land could get to this piece without having to contend with the abrupt bluff?

A.    He would have to make his detour around in here somewhere, and go down in that direction—down the valey.

Q.    Suppose the railroad should cut down to the full width of their right of way, on a level with their road bed at the present time, making thirty-seven feet of a cut at the point that the county road crosses on the south-west corner of the triangular piece, what means of access would they have to this land?    *    *    *

A.    There would seem to me to be none from that direction.

Q.    Would there be any from any direction?    If so, can you point out on this map what direction it might be had to that land?.

A.    In going east along the county road from this point (*indicating the south-west corner of the eighty, of which this three acres is a part*) that land could be reached by making a detour around this abrupt descent, and then approach it from the north or north-west, which I think would be about the only practical route that that portion of the land could be reached by.

Q.    Would there be any additional distance to travel to go this route you have indicated to this cove that is west of this piece of land?    *    *    *

A.   Yes, sir.   It would necessitate an increase of the distance.

Q.   Over whose land would this have to be, this road?

A.   Mrs. Weimer's.

Q.   Land not condemned?

A.   Yes, sir.

There was a great deal more testimony of this character.   While I confess that I do not understand it or see its applicability, I do not doubt that the jury upon a view of the premises were able to understand it, and by applying the testimony to the several points indicated were able to properly estimate the damage to the remaining land of defendant caused by the deep cut and embankment on the right of way and the deep gradient of the county road. To say the least of it, when there has been so much testimony tending to show that defendant's land has been damaged, has been isolated and rendered inaccessible by reason of the taking of the right of way and the cuts and fills rendered necessary by the construction of the railroad, and the jury have been permitted to view the premises, it is impossible for a reviewing court to say that a verdict for an amount of damages which seems to be reasonable and quite within the range of probability is unsustained by the evidence.   The additional point is made by counsel for plaintiff in error that "the damages awarded by the verdict are excessive."   We have seen that the testimony would sustain a verdict for two hundred and sixty-one dollars and seventy-five cents for the land actually taken, and applying what is said above in relation to the evidence of damage to land not taken, together with the view of the premises, to the amount of the verdict, it will be seen that we are unable to say that it is excessive.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other judges concur.