## ROBERT H. TINKER

### V.

## THE CITY OF ROCKFORD.

*Railroads—Eminent Domain—Damages—Estoppel—Municipal Corpo-
rations—Pleading.*

1. A deed of land to a railroad company for its location bars the right
of the grantor to sue for damages to the remainder of his land by reason of
lawful constructions by the company which are necessary and incident to
the operation and maintenance of its road.

2. The replication " *de injuria*," is not proper where the plea sets up
some authority in law which is *prima facie* a legal defense.

3. A replication, which is argumentative and does not take issue with
the allegations of the plea, but simply attempts to set up matter which
should have been alleged in the declaration, is demurrable.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Winnebago County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Messrs. WARNER & ANDREWS and L. C. JACOBY, for appellant.

Appellant claims the incidents the grant of himself and wife was accompained with, were such as were essential to its enjoyment at the particular time of the grant, having reference to the then surroundings, and in the absence of a provision in the deed covering future injuries outside the grant, and independent of the grant, appellee's claim can not stand. A demurrer to declaration was overruled properly in the light of the following authorities : Provision Co. v. City of Chicago et al., 111 Ill. 651; Rigney v. City of Chicago, 102 Ill. 64; City of Chicago et al. v. The Union Building Association, 102 Ill. 379; Patrick H. Stack v. The City of East St. Louis, 85 Ill. 377; Schneider v. City of Detroit, (Sup. Ct. of Mich.) Vol. 40 N. W. Rep. 328; City of Olney v. Wharf, 115 Ill. 519.

While holding city not liable in that particular case, approves the former cases. Railroad Co. v. Hartley et al., 67 Ill. 439; Railroad Co. v. City of Chicago, 121 Ill. 176 and 186; Railroad Co. v. Ayers, 106 Ill. 511.

The Illinois cases cited are believed to be in all respects harmonious with the New York Elevated Railroad cases which are: Story v. New York Elevated Ry. Co., 90 N. Y. Appeals, 122 and 198; Lahr v. Metropolitan Elevated Ry. Co., 104 N. Y. Appeals, 268 and 269; Drucker v. Manhattan Ry. Co. et al., 106 N. Y. Appeals, 157–65.

In a somewhat similar case to that at bar, a conclusion was reached, after an exhaustive presentation, that the railroad company, and not the city, was liable to the plaintiff. Burritt v. Railroad Co., 42 Conn. 174, 203.

It is settled doctrine that, upon a voluntary conveyance of land for railroad purposes, no more and no less will be comprehended therein than would have been involved had the same lands been taken, for the same purpose, by compulsory process.

It is also well settled that a railroad corporation existing under the laws of this State can build where it will between streets of a municipal corporation; but when it comes to crossing public streets, it can not do so without having obtained municipal assent therefor. Railroad Co. et al. v. Dunbar et al., 100 Ill. 110.

The city is under no duty which could be enforced by mandamus to permit a railroad corporation to lay its tracks and operate its road over and across public streets. How a railroad company will get through a city is, so to speak, a matter of municipal grace. It must make the best terms it can with the city council; and, as a matter of daily experience, it seldom has trouble in getting most desirable terms. It is well settled law that where a deed of conveyance describes the premises by precise metes and bounds, such description is to govern in a construction of rights which flow from such deed; and courts are not at liberty to go outside and guess and speculate as to what parties intended, who have explicitly stated, in writing, what they intended. The reason for this manifestly is that the court, in attempting to speculate, conjecture or guess, might make a mistake. It is equally well settled an easement, appendant or appurtenant, and therefore incident to an estate, must have one terminus on the land of the party claiming the easement—it must inhere in the land, concern the premises and be essentially necessary to their enjoyment; they are in the nature of covenants running with the land. Garrison v. Rudd, 19 Ill. 558.

We suppose it is also well settled law that the damage to remaining premises must be such as have their origin in, and flow from, the use of the premises taken for railroad purposes, and not such as have their origin in, and flow from, a purpresture beyond the owner's premises, or any other like extraneous circumstance.

It is also undoubted law that the land owner, on a conveyance which discloses by its terms, or by implication of law, that it was made for railroad purposes, consents that the premises granted may be filled with railroads, and non-actionable fires set therefrom upon his remaining lands, and all the incon-

veniences incident to railroad operations within the limits of his grant are to be submitted to, if they are ordinary incidents of railroad operation, without recompense. But when it comes to aiding a railroad to extend its operations outside of and beyond the limits of the grant, an entirely different question arises. The enjoyment and use of the premises granted, and the enjoyment and use of a railroad outside of the limits of the premises granted, are entirely distinct matters.

A mere convenience is not sufficient to create, or convey, a right or easement, or impose burdens on lands other than those granted, as incident to the grant; in all cases the question of necessity controls. Howell v. McCoy, 3 Rawle (Pa.,), 256; The St. Louis Bridge Co. v. Curtis et al., 103 Ill. 410; Washburn on E. & S. (4th Ed.) mar. p. 163, top p. 258.

Messrs. MARSHALL & TAGGART, for appellee.

The damages sued for would have been embraced in the damages awarded in a condemnation suit, for these reasons : In so far only as plaintiff had an appurtenant right in Winnebago street can he recover. The right alleged to have been invaded was one appurtenant to the whole of his original property, and the damages sued for would have been involved in a condemnation suit. No action lies for obstruction of a street except where plaintiff has an appurtenant right therein. City of East St. Louis v. O'Flynn, 119 Ill. 200; City of Chicago v. Union Building Ass'n, 102 Ill. 379; Littler v. City of Lincoln, 106 Ill. 353.

Every decision upon this question is to the effect that such damages are embraced in condemnation proceedings. The following case is especially in point. Sioux City R. R. v. Wiemer, 16 Neb. 272; 20 N. W. Rep'r, 349.

The Supreme Court of Massachusetts has said of over-head crossings and approaches, under statutes in legal effect the same as ours, as follows:

" Hence it appears, that the raising of a common road, with an embankment of sufficient length on each side to form an easy slope to a high bridge, is a part of the franchise given by the charter, as much as the right to take private property, or

to pass over navigable waters. These bridges, and the embankment extending laterally therefrom, are as much a part of the structure authorized by the charter, as the railroad itself. This brings the case of damnified by such structure within all the reasons and within all the provisions which give compensation for damages occasioned by the laying out, making and maintaining of the railroad." Parker v. The Boston & Me. R. R., 3 Cush. 116.

In the same direction are: Buckner v. C., M. & St. P. Ry. Co., 56 Wis. 403.

The law does not favor the splitting of actions. Whatever the form of suit, all damages must be recovered in one suit. C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203.

The appraisement of damages in a condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce. Mills on Eminent Domain, Sec. 216, and cases cited; C. & A. R. R. Co. v. S. & N. W. R. R. Co., 67 Ill. 142; K. & E. R. R. Co. v. Henry, 79 Ill. 290.

The conveyance of land to a railroad company by ordinary deed, without condition, is in law a conveyance of a right to do whatever is lawful in the construction and operation of the railroad.

A conveyance authorizes everything that a condemnation would authorize. At common law the right to take was without compensation, and at the will of the sovereign power.

Constitutional limitations require just compensation to be made. This must be ascertained by agreement, if possible, and a petition for condemnation can be filed only in case of disagreement. Surely the agreement or deed should have as broad a scope as the substitute for agreement, that is, condemnation proceedings.

Pierce on Railroads, 133, states the rule as follows: "A deed of land to the company for its location, is presumed to include a license to do whatever is lawful in the construction and management of its road, to the same extent, and with the same effect, as if the land had been compulsorily taken; and it is therefore construed to release a claim for injuries to the land of

Tinker v. City of Rockford.

grantor, or for other damages to which he would have been entitled if the land had been taken by proceedings *in invitum.*"

The author cites Norris v. Vt. Cen. R. R. Co., 28 Vt. 99; Rood v. N. Y. & E. R. R. Co., 18 Barb. 80; Conwell v. Springfield & N. R. R. Co., 81 Ill. 232; Hartsman v. Lex. & Cov. R. R. Co., 18 B. Monroe, 218, and Booth v. Androscoggin R. R. Co., 51 Me. 318.

Rorer on Railroads, Vol. 1, 324, in the text, gives the rules of damages in condemnation suits, saying nothing specially about the effect of a deed, except in the last part of note 1, which reads as follows, to wit: "And this is so, too, when the right of way is acquired by purchase. Ludlow v. Hudson Riv. R. R. Co., 6 Lans. 128; Hartsman v. Lex. & Cov. R. R., 18 B. Mon. 218; Hatch v. Vt. Cen. R. R. Co., 25 Vt. 49; J. N. & S. R. R. Co. v. Cox, 91 Ill. 500."

Hartsman v. Lex. & Cov. R. R. Co., 18 B. Monroe, 218, was a case where the depth of cut caused land outside of right of way to cave. The land for the right of way had been conveyed by ordinary deed. The land owner insisted that it was the company's duty to prevent caving, by wall or otherwise. The court held that the land having been conveyed to the railroad company for the construction of a railroad, the damages were released.

Rood v. N. Y. & E. R. R. Co., 18 Barb. 80, is to the same effect. Among other things, the court, on page 85, says: "It is a well known and reasonable rule in construing a grant that when anything is granted, all the means to attain it, and all the fruits and effects of it are granted also. Shepherd's Touchstone, 79; 9 Metc. 36."

As a railroad can only take for its corporate purposes, a grant to it must amount to a grant to build all lawful structures. The deeds in the cases above are all ordinary deeds similar to the one set up in the pleadings in the case at bar.

In Norris v. Vt. Central R. R. Co., 28 Vt. 99, the plaintiff, at the time of the survey of the railroad, and before construction, conveyed to the company a piece of land by ordinary deed, and so far as the case shows, without any notice of what special use was to be made of it, but which the company ex-

cavated and used for the purpose of turning a river. We quote from the opinion as follows: "It is not claimed in argument that the act of turning the river by the defendant was in itself unlawful; and it is clear that, if the defendants are to be made liable upon the ground of negligence or want of care or skill in turning the river, by means of which the damage was caused, such case must be affirmatively made out. None is found by the referee, unless the law imposes the duty upon the railroad company to observe the action of the water from time to time upon the plaintiff's meadow, and to cast in brush and stones, as a prudent man would do to save his own land; or unless the company was bound as a matter of law to protect the banks of the river at all events so that the stream should not encroach on the plaintiff's land." See also North and West Branch R. R. Co. v. Swank, 105 Penn. St. 555.

In Hodge et al. v. Lehigh Valley R. R. Co., 39 Fed. Rep. 449, it is said : "In other words, the railroad company has no right to exercise the powers conferred upon it by charter until it makes compensation, in some form, to the owner of the land which is taken, and over which the railroad is being constructed. The railroad company must agree with the owner of the land, or if that can not be done, then it must apply to the proper tribunal for the appointment of commissioners to assess the damages which are assumed to result from the construction of the railroad," etc.

And again: "Accordingly, a deed of conveyance was made by the plaintiff, conveying the land to the railroad company. The deed was executed and delivered, and was for a consideration stated in that deed. The consideration was accepted by the owner of the land, and it had all the effect then of the transfer of the right of the land owner, and an investiture of the right to construct this road, upon the railroad company, which the condemnation proceedings would have had, and embraced all the damage the plaintiff might have recovered by condemnation proceedings. It is not a mere partial release of the damage to which the owner of the land might be entitled which is provided for there, but the construction which the court gives to it is that it relieves the

railroad company as effectually from the payment of the damages caused by the construction of the road as the perfected condemnation proceedings would have done.    Whatever damages, then, would result necessarily from the construction of that road through the lands of the plaintiff were released to the railroad company, or rather the railroad company was released from all liability for them, just as effectually as if the land had been taken by the railroad company under the condemnation proceedings, and they embraced all damages necessarily resulting from the construction of the road, whether they were in contemplation of the parties or not."

The above case was one where the damages were claimed to result from changes made in a bridge years after the road, was first built.

In most of the cases above referred to the deed appears to have been an ordinary deed.    In the case in 6th Lans. 128, there was an *habendum* clause limiting the use to railroad purposes.

Our statute in effect does the same, as it only gives railroad companies power " to purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railroad and the stations and other accommodations necessary to accomplish the object of its incorporation."    Sec. 20, Chap. 114, Starr & C. Ill. Stats.

The limitation of the general incorporation laws as to real estate would probably have the same effect.    Sec. 5, Chap. 32, Starr & C. Ill. Stats.

It is true that the purchase of real estate may give no indication of what use it is to be put to, but where a corporation is incorporated for a specific purpose, and is only authorized to buy real estate for that purpose, every one selling land to such corporation must know that the land is sold and conveyed to be used for such corporate purposes.

Upton, P. J.    The questions presented by this record arise from the pleadings, which are quite voluminous.    The averments of appellant's declaration are, in substance, that he was the owner of a lot, number 3, in block 5, in Church & Robin-

son's addition to the city of Rockford, abutting on Winnebago street. That appellee, in 1883, had permitted some railroad companies to construct a viaduct in said street, thirty feet wide, twenty feet high and 800 feet long, north of appellant's premises, to permit cars and railway trains to pass under it in crossing that street, with a southerly approach thereto for the public use and travel on that street, and had fixed a grade of the street, and, in conformity thereto, appellant had, in September, 1884, erected three dwelling houses fronting upon that street, with basements, corresponding to the surface grade of the street; that the viaduct was constructed pursuant to the ordinances of appellee, and that the "fee" of the street was in the city of Rockford; that the doors and windows of the said dwelling houses, so erected, were fronting upon and faced Winnebago street. The grievances complained of are that in August, 1887, the appellee, by its ordinance, permitted the said viaduct to be further extended southward for a distance of 300 feet, and in front of two of said houses, so erected by the appellant, thereby obstructing the egress and ingress to and from the two north dwelling houses, to and from Winnebago street; that by the extension of the southerly approach to the viaduct, the grade of the street has been raised in front of appellant's two north dwelling houses, obstructing the light from the windows of those dwellings, causing dust and noxious substances to be blown into the windows and doors of the said dwellings, and greatly depreciating the rental and actual value thereof, and of great damage to appellant. It is further averred that the extension of the viaduct in 1887, in front of the dwellings of appellant, was not necessary, either for the public use and travel of Winnebago street, or for the corporate purposes of the city of Rockford.

The original declaration contained three counts. The second count was withdrawn by appellant by leave of court. The first and third counts were in substance alike. The appellee pleaded the general issue, and three special pleas thereto; to these special pleas appellant demurred, and the court

sustained the demurrer to the first and third special pleas, and held the second special plea good.

The plea to which the demurrer was overruled by the trial court was, in substance, that the Chicago, Madison & Northern Railroad Company, with lawful power so to do, with right to take and damage public property therefor by eminent domain, was constructing a railroad across lot three (3), described in the declaration, and across other lands of appellant adjoining it, and which constituted therewith one property, and across Winnebago street west from lot three (3), upon such a line and grade as had been theretofore established according to a survey theretofore made, and which line and grade so established was designated on grade stakes set up on its line of such survey, on the appellant's land, duly marked, showing such grade, which construction upon such line and grade was of such a character as to entirely cut off and stop travel on Winnebago street, unless a viaduct should be constructed therein, over and across the proposed railroad, at a great height, to wit, twenty-two feet above said street, so as to permit the passage of trains and cars thereunder, and public travel thereon, together with a southerly approach thereto ; that the railroad company was about to construct its railroad so established, and the viaduct across Winnebago street (as a necessary incident thereto, which, by law, it was required to do, in the construction of its road), and in such a manner that appellant's lands were necessary to such construction, and so that appellant had a right to withhold his land until his damages for such viaduct were paid, and that appellant, with knowledge of the premises, before the committing of the grievances complained of, for the consideration of $55,000, sold and conveyed to the railroad company, by deed, duly executed and acknowledged, a large part of the said lot three (3), describing the part, and other lands; which conveyance was so made for the purpose of enabling the railroad company to construct its railroad and all necessary adjuncts thereto, and all necessary structures therefor ; that the railroad company did construct said viaduct in a proper and skillful manner, doing no unnecessary damage to the appellant, which is the grievance complained of.

Subsequently, and at the April term of the Winnebago Circuit Court, appellant by leave filed an additional count to his original declaration. In this count appellant avers that on or before the date of his deed of conveyance to the railroad company, above stated, December 29, 1886, he was the owner of the lot three (3) in question; that the lot abutted on Winnebago street, and on a level therewith; avers that on the 1st day of December, 1886, the appellee, having control of said street, by its ordinance authorized and permitted the Chicago, Madison & Northern Railway Co. to enter into possession of that street, and to erect a superstructure or approach to the southern end of the viaduct, then upon said street. And in pursuance thereof, the said railway company entered into possession of said street and obstructed the same in front of and along appellant's land, with such superstructure, by means whereof the tenants occupying the two north dwellings upon said lot vacated the premises, and appellant was unable to obtain other tenants therefor, and the same have become and are unproductive in consequence of the noise and confusion, falling of dirt and dust caused by the travel in the said street over the viaduct, and the value of said buildings is greatly depreciated; avers that said superstructure was not necessary for any purpose of public travel over said street; that the ordinance allowing such use to the railway company was passed November 30, 1886, and approved December 1, 1886, and sets out the ordinance.

It is further averred that the land purchased by the railway company from appellant was filled in some six feet in height within the railway company's right of way on both sides of Winnebago street, which filling elevated said viaduct and thereby prolonged the approach thereto on the south unnecessarily in front of appellant's said dwellings, and from no necessity of public travel upon the street or use for the corporate purposes of appellee, by means whereof the rental and market value of appellant's two north tenement houses situate upon said lot are permanently injured and damaged to the amount of $3,000.

To this additional count, appellee filed the general issue and

one special plea, in which special plea appellee sets out the same alleged facts in substance and effect, but more in detail, as it had before interposed in its second special plea to appellant's original declaration as above set forth.  To this special plea appellant replied, *"de injuria,"* and upon the filing of that replication appellee demurred, specially assigning as cause of demurrer, among other causes, that the special plea set up and stated a positive legal right in the railway company to erect and maintain the structures complained of in the appellant's declaration, and not mere matters of excuse.  The trial court sustained the demurrer.

Thereupon appellant filed a special replication to appellee's second special plea to the first and third counts of the original declaration, and also replied specially several matters, by leave given, to appellee's special plea to the additional count of appellant's declaration, and joinder upon the appellee's plea of not guilty.

Both of the above special replications of appellant conclude to the country, and to each appellee interposed a special demurrer which the trial court sustained, whereupon appellant abided his replication and prosecuted this appeal.

Two questions are made upon this record by counsel for the respective parties, which we are asked to consider: First, were the pleas interposed to the original declaration and the amended count thereof, as pleaded, sufficient to bar a recovery; and second, were the replications filed thereto obnoxious to the demurrers interposed as held by the trial court.

First.  It is a well settled rule of law that a city has absolute control over the grade of its streets; it can make the grade light or heavy, and elevate and lower it at pleasure, and adjacent lot owners can not call it to account for errors of judgment in these respects or demand damages because they may incur inconvenience or expense in adjusting the level of their own premises to that of the street, for the purpose of ingress or egress thereto.  It has the same power, and no more over its streets, that a private individual has over his own land, but it can not be permitted to exercise such dominion to the injury of another's property in a mode, or to such an

extent, as would render a private individual responsible in damages, without being itself responsible. Nevins v. The City of Peoria, 41 Ill. 502, and cases cited.

In the case at bar the averments of the pleas are, that the Chicago, Madison and Northern Railroad Company, with lawful power so to do (setting out such corporate power), were constructing a public railroad, the line for which had been previously surveyed and located, under and pursuant to the powers granted it, through the city of Rockford, crossing Main and Winnebago streets in that city; that appellant's lot 3 in block 5, here in question, abutting on Winnebago street on the east, and the lands between Winnebago and Main street for a distance of 48 rods, were owned by the appellant and his wife, and constituted but one property and body of land, over and across which the line of said railway had been prior thereto surveyed and located, which line was indicated by stakes driven in the ground, upon which were marked and indicated the proposed grade of its road when constructed. The line so located by its surveys crossed Main street at grade, and thence westerly across the lands of appellant and those of his wife to Winnebago street, at the point of intersection with which last named street and along the westerly line of appellant's lot 3, extending north, there was then existing and for several years prior thereto had existed, a viaduct in said Winnebago street with a graded southerly approach thereto, erected by the city for the crossing of said streets by other railroads and passing engines and cars thereof thereunder, which was twenty-two feet above the grade of Main street, and it thereby became impracticable to construct and operate its said railroad upon the grade and line of its survey, without cutting off that viaduct and its approaches thereto, rendering it impassable for public travel and use until a new viaduct could be constructed, from such existing viaduct south, with a new approach thereto, to accommodate public travel upon Winnebago street. That the railway company were bound by law to restore such street to its former state of usefulness without unnecessary damage thereto, which required it to construct an extension of the then existing viaduct and suitable and proper approaches thereto,

and for that purpose made application to the city to designate the methods and plans for the construction thereof, which it was the duty of the city to do and which duty and obligation the city discharged by its public ordinance, passed November 30, 1886, approved December 1, 1886, (and recited in the record before us,) in and by which ordinance, permission and authority were given to said railroad company to construct its railroad crossing over Main street at grade, and to elevate and extend the viaduct on Winnebago street, as the same was thereafter elevated, extended and constructed; that such elevation, extension and construction was a necessary incident to the construction and proper operation of said railway, and the only proper means of restoring Winnebago street to its former usefulness as a street for public travel. That the damages caused thereby to appellant's lot 3, and land, were such that he had a right to withhold his said lot and land from use by said railway company until the same should be paid, and were such that in condemnation proceedings he would have been entitled to have had definite plans and specifications of such viaduct and the approaches thereto abutting appellant's said lot, and all his damages paid; and that after the said survey had been so made and its line of railway established, and the stakes over appellant's land on such line had been driven, showing its line and grade, and after the application by said railway company to said city as aforesaid, and the passage and approval of the ordinance thereof as before stated, and with full knowledge and notice thereof, on the 26th day of December, 1886, the appellant and his said wife, by deed in writing by them duly executed and acknowledged, conveyed to the said railway company the said body of land from Main to Winnebago street for the purpose of construction thereon by the railway company of its depots, buildings and structures necessary and needful in constructing and operating its railroad, including in such conveyance a large part of the said lot 3, for the consideration of $55,000, then paid appellant therefor by the railway company, by means whereof said pleas averred that the appellant conveyed to the railway company the right to construct and maintain its railroad structures, including the said viaduct

and the extension thereof, pursuant to the ordinance of said city, and then avers that such grant and conveyance to said railway was made by appellant and his wife long after the location of its said line of railway, survey, and establishment of its grade through and across Main street and the lot and lands of appellant and his wife, by its engineers, and the ordinance of said city, raising the said viaduct and extending the southerly approach thereto, and avers the construction of the viaduct by the railway company, its necessity, and that no unnecessary damage was done, etc., and that nothing was done but what was the duty of the city to require in such construction, and that the erection of such viaduct and extension of the approaches thereto, were the only grievances complained of, etc.

That it was the duty of the city, upon the application of the railway company, to grant permission to construct and operate its railroad through that city, and across the streets thereof, and by ordinance or otherwise, supervise, control and direct the construction and maintenance of such crossings so as to secure and protect the rights of the public in the free use and enjoyment of the streets, and the property owners abutting thereon, will scarcely be denied. Olney v. Wharf, 115 Ill. 519.

That in the discharge of such duties, regard should be had to the needs and requirements of all its citizens and not to the special interests of any one of them is evident. The right of eminent domain is guarded by constitutional limitations requiring just compensation to be made to the owners of property taken or damaged by its exercise.

This compensation must be ascertained by agreement, when possible; condemnation can be had only in case of disagreement.

It would seem to follow that such agreement, however evidenced, should receive as liberal construction, and be given as broad a scope in application, as its substitute, i. e, condemnation proceedings.

Under the averments of the plea in the case at bar, if true, and we must so regard them in this investigation, it would

be scarcely credible that the appellant made the conveyance of the larger portion of the lot in question, with the other land of his wife, with the grade stakes thereon, indicating the crossing of Main street at grade, at so short a distance from Winnebago street, at the point of intersection with its proposed line of construction, at which point was then existing a viaduct of more than twenty-two feet in height, and after the city had, by its public ordinance, determined the method of such crossing, and authorized the extension of the approaches thereto, extending such approaches to the tenement building of appellant, then erected and in use, without full knowledge, or at least without knowledge of such facts as should have put him on inquiry of the elevation and construction of said viaduct and the consequent extension of the approaches thereto and the damage to his dwellings, if any, occasioned thereby. But, be that as it may, it is distinctly averred in the pleas that appellant was in possession of actual knowledge of all the facts, and with full knowledge thereof made the conveyance to the railway company for the consideration therein mentioned.

It is true that the deed of conveyance made no mention of the purposes for which the land conveyed thereby was to be used, but it was made to the "Chicago, Madison & Northern Railroad," as it is averred, and, by law, railroad companies had power only "to purchase, hold and use real estate * * * for the construction and use of its railroad and stations," etc. (Sec. 20, Chap. 114 R. S.; Sec. 5, Chap. 32 R. S., Starr & Curtis), and appellant was bound to know the law.

Pierce on Railways, at page 133, states the following rule:

"A deed of land to the company for its location, is presumed to include a license to do whatever is lawful in the construction and management of its road, to the same extent and with the same effect as if the land had been *compulsorily taken*, and it is therefore construed to release a claim for injuries (damages) to the lands of the grantors, or for other damages to which the grantor would have been entitled, if the land had been taken by proceedings *in invitum*, to sustain which he cites Norris v. Vt. Cent. R. R., 28 Vt. 99; Rood v. N. Y. & E. R. R., 18 Barb. 80; Conwell v. Spring-

field & Nor. R. R., 81 Ill. 233; Hartsman v. Lex. & Cov. R., 18 B. Monroe, 218, and Booth v. Androscoggin R. R. Co., 51 Maine, 318.

Judge Redfield, in his treatise on the law of railways, Vol. 1, pages 218, 219 and notes, says: "In case of a deed to a railway company of land on which to construct its road, the assent of the company will be presumed, and it will be bound to the conditions of the grant;" and in foot note 6:. "And the *rights* and duties of the company in such case are precisely the same as if the land had been condemned by proceedings *in invitum*, under the statute. Such a grant carries with it the incidents necessary to its full enjoyment." Citing in support thereof, Rathbone v. Tioga Navigation Co., 2 Watts & Serg. 74; Norris v. Vt. Cent. R. R. Co., 28 Vt. 99; Hartsman v. Lex. & Cov. Ry., 18 B. Monroe, 218; Louisville & Nash. Ry. v. Thompson, 18 B. Monroe, 733.

In Rorer on Railroads, Vol. 1, 324, it is said, after stating the well known rule of damages in condemnation suits by proceedings *in invitum*, in a foot note to the text, "And this is so, too, when the right of way is acquired by purchase." Citing, in addition to those above cited, Ludlow v. Hudson R. R., 6 Lansing, 128; Hatch v. Vt. Cent. Ry., 25 Vt. 49, and J. N. & S. Ry. v. Cox, 91 Ill. 500.

We think the rule stated in the text books above referred to is fully sustained by the authorities cited by the learned authors above quoted.

To the cases above cited might be added the following cases: N. & W. Ry. Co. v. Swank, 105 Penn. St. 555; Hodge et al. v. Lehigh Valley R. R., the opinion in which last case was filed April 29, 1889, reported in Federal Rep. Vol. 39, pages 449 to 456, and in which cases the questions involved in the case at bar are fully discussed and determined in full accord with the views above expressed.

We regard it as settled beyond question that in proceedings *in invitum* in which damages are assessed, conducted in pursuance of law and without fraud, constitute a bar to an action for all injuries which could legally be included in such assessment. The award in such proceedings is regarded as a

judicial act, and, unless appealed from, like a judgment at law, becomes *res adjudicata*, and can not be impeached collaterally.

We think the damages claimed in the suit at bar would have been embraced properly, as well as legally, in the damages in condemnation proceedings, under the act of eminent domain.

The right alleged to have been invaded by appellant was one appurtenant to the whole of lot 3, the greater portion of which is averred to have been conveyed to the railway company for the purpose of construction and use of its railroad; and in condemnation proceedings, by the taking for the construction and maintenance of its road over said lot, appellant would have been entitled to all damages sustained, not only by the taking of that part of the lot conveyed, but all the damages caused by the construction, as well as the use, of a railroad to the remaining portion of said lot appurtenant to Winnebago street, whether such damages arose from embankment, or excavation, or in the construction of a viaduct in the approach thereto in Winnebago street, as should be necessary and proper to be made in such construction and maintenance. It is to be observed that appellant, in his declaration, does not aver or complain that the location of the line of railway, its grades or the construction thereof was not in all respects proper and necessary, and the result of good engineering, nor that the viaduct and the southerly approach thereto were not constructed in the most suitable and proper manner, and necessary to be erected and maintained to subserve the use of the street by the public; but the complaint is that a fill of six feet from Main to Winnebago streets created the necessity of raising the viaduct in Winnebago street, and the consequent extension of the approach thereto. It will be further observed that the pleadings disclose that the crossing of Main street at grade was fixed by the city, and it is to be presumed was done in the interest of its citizens and the public in the use of that street, and that good engineering required the fill of six feet for the proper construction of the railway; besides, it is alleged, complainant was fully apprised as to the location

of the line of railway and its proposed grade of construction, and consequent necessity of elevating the viaduct and the approaches thereto, at the time of the execution of such conveyance. Appellant should not be favored in splitting up his damages. In whatever was the manner of that adjustment, it should be regarded as final. The appraisement of damages in proceedings *in invitum* embraces all past, present and future damages which the improvement may thereafter reasonably produce. Mills on Eminent Domain; C. & A. Ry. v. S. & N. W. Ry., 67 Ill. 142; K. & E. Ry. v. Henry, 79 Ill. 290; Sioux City R. R. v. Weimer, 16 Neb. 272; Parker v. Boston & N. E. Ry., 2d Cushing R. 116; Buckner v. C., M. & St. P. Ry., 56 Wis. 403; N. & W. Branch R. R. v. Swank, *supra;* Norris v. Vt. Central R. R., 28 Vt. *supra;* Hodge et al. v. Lehigh Valley R. R., *supra.*

If we adopt the canon of construction claimed by the learned counsel for appellant in the exhaustive argument before us, the same result follows. It seems to us, therefore, that the facts averred in the pleas interposed by the appellee, by necessary legal implication, show full and legal satisfaction for the damages complained of in the declaration, and each and every count thereof, and constitute a legal bar to the action and were properly pleaded, and that the trial court rightfully so held.

Second. Were the replications filed thereto obnoxious to the demurrers?

To the first plea, above, as stated, the appellant filed the replication, "*de injuria.*" This replication is not proper in a case where the plea to which it is interposed, sets up some authority in law, which *prima facie* would be a legal defense or justification for the act complained of.

The appellant will not be allowed to enter the plea to show an absence of that authority so as to convert appellee into *a tort feasor, ab initio,* 3 Vol. Bouvier's Institution, title, "*De Injuria;*" 1st Smith's Leading Cases, 53 to 61. The plea here shows authority in *law* under the ordinance of the city and also by a deed from appellant to railroad company to make the viaduct, and necessarily the approach thereto. The

demurrer thereto was, therefore, rightfully sustained. This defense as set up in the pleas is in the nature of an estoppel, or authority by the appellant to the railroad company to build the viaduct and approach thereto, in consideration of an amount of money paid by it to him for a deed of certain real estate and right of way, including consequential damages to his remaining property, caused by the injury complained of. The plea is not pleaded as an *excuse,* but in assertion of a claim of legal *right* and is therefore a plea to which the general replication, "*de injuria*" could not be pleaded. Stevens on Pleading, 163, 164, original paging, 8th Am. Ed.; Allen v. Scott, 13 Ill. 80, and cases cited.

The other two replications are improper. They take issue with no proper allegation of the plea. In a legal form, it seemingly is an attempt to set up matter which should have been alleged in the declaration, if requisite or proper to be set up at all; are argumentative, and do not appear to contain any of the legal elements of a replication at law. The plea, as we have attempted to show, in our judgment, set up a perfect defense to the action, as set forth in the declaration, and there being no replication adequate or proper to overcome the defense interposed by the pleas, which stand admitted, the judgment of the trial court in favor of that defense set up by the pleas was therefore proper, and we must so hold.

The judgment of the Circuit Court is affirmed accordingly.

*Judgment affirmed.*

SMITH, J., dissenting. I do not concur with either the reasoning or the conclusions of the majority of the court in this case. I hold the two last special replications to the defendants pleas were good answers to the pleas to which they were interposed. They properly denied the averments in the pleas or confessed and avoided them and tendered an issue of fact. Even if either of these replications had been open to special demurrers (which I deny) still the special demurrer was not sufficiently specific to reach any special cause of demurrer. It is not sufficient on special demurrer to say that the replication was "argumentative" or "double"

or evasive. The pleader must point out the *precise and particular defect* complained of and, in the language of Chitty, must, "lay his finger on the very spot to which he objects."

A general complaint of want of sufficiency is wholly insufficient in a special demurrer to reach defects of a mere formal character, and which are not reached by a general demurrer. 1 Chitty's Pleading, 668. I think the judgment should be reversed.